AO 102 (01/09) Application for a Tracking Warrant

FILED
RICHARD W. NAGEL
CLERK OF COURT

# UNITED STATES DISTRICT COURT
### for the
### Southern District of Ohio

2018 JUN 21 PM 3: 06

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
WESTERN DIV. DAYTON

| | |
|---|---|
| In the Matter of the Tracking of<br>*(Identify the person to be tracked or describe<br>the object or property to be used for tracking)*<br>SILVER 2007 CADILLAC CTS, VIN #<br>1G6DM57T970189487, BEARING LICENSE PLATE<br>HJZ 4001 (OH) | )<br>)<br>)<br>)   Case No.  3:18 mj 451<br>)<br>)<br>) |

## APPLICATION FOR A TRACKING WARRANT

I, a federal law enforcement officer or attorney for the government, have reason to believe that the person, property, or object described above has been and likely will continue to be involved in one or more violations of 21 U.S.C. § 841(a)(1), 846 . Therefore, in furtherance of a criminal investigation, I request authority to install and use a tracking device or use the tracking capabilities of the property or object described above to determine location. The application is based on the facts set forth on the attached sheet.

☑ The person, property, or object is located in this district.

☐ The person, property, or object is not now located in this district, but will be at the time of execution.

☐ The activity in this district relates to domestic or international terrorism.

☐ Other:

The tracking will likely reveal these bases for the warrant under Fed. R. Crim. P. 41(c): *(check one or more)*

☑ evidence of a crime;

☑ property designed for use, intended for use, or used in committing a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☐ a person to be arrested or a person who is unlawfully restrained.

☑ I further request, for purposes of installing, maintaining or removing the tracking device, authority to enter the following vehicle or private property, or both:
SILVER 2007 CADILLAC CTS, VIN # 1G6DM57T970189487, BEARING LICENSE PLATE HJZ 4001 (OH); 547 W. Franklin Street, Troy, Ohio.

☑ Delayed notice of 30 days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Special Agent Austin M. Roseberry, DEA
*Applicant's printed name and title*

Sworn to before me and signed in my presence.

Date: 6/21/18

_____
*Judge's signature*

City and state: DAYTON, OHIO

MICHAEL J. NEWMAN, U.S. MAGISTRATE JUDGE
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

IN THE MATTER OF THE TRACKING OF:

(1) SILVER 2007 CADILLAC CTS, VIN #
1G6DM57T970189487, BEARING
LICENSE PLATE HJZ 4001 (OH)

AND;

(2) WHITE 1997 CADILLAC DEVILLE, VIN
# 1G6KE52Y9VU211226, BEARING
LICENSE PLATE GZE 5545 (OH)

Case No. 3:18 mj 451 .

**Filed Under Seal**

## AFFIDAVIT IN SUPPORT OF
## APPLICATIONS FOR SEARCH WARRANTS

I, SA Austin M. Roseberry, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of applications for search warrants under Federal

Rule of Criminal Procedure 41 and 18 U.S.C. § 3117 to authorize the continued installation and

monitoring of a tracking device on (1) a Silver 2007 Cadillac CTS, displaying Ohio license plate

HJZ 4001, VIN # 1G6DM57T970189487 ("SUBJECT VEHICLE 1"), and (2) a White 1997

Cadillac Deville, displaying Ohio license plate GZE 5545, VIN # 1G6KE52Y9VU211226

("SUBJECT VEHICLE 2") (together SUBJECT VEHICLES).  Based on the facts set forth in

this affidavit, I submit that there is probable cause to believe that the SUBJECT VEHICLES are

presently being used in furtherance of narcotics trafficking and conspiracy to commit narcotics

trafficking, in violation of Title 21, United States Code, Sections 841 and 846, and money

laundering and conspiracy to commit money laundering, in violation of Title 18, United States

Code, Section 1956, and that there is probable cause to believe that the continued installation of a

tracking device on the SUBJECT VEHICLES and continued use of the tracking devices will lead

to evidence, fruits, and instrumentalities of the aforementioned crimes, as well as to the identification of individuals who are engaged in the commission of those and related crimes.

2.      I am a Special Agent with the United States Drug Enforcement Administration (DEA), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 21, United States Code, Section 878. The information contained in this Affidavit is either personally known by me or relayed to me by other law enforcement officers involved in this investigation.  I have been employed with the DEA since July of 2012.  I attended the DEA Academy which consisted of approximately 20 weeks of training in conducting federal drug trafficking investigations, handling confidential sources, conducting undercover operations, conducting mobile, static, foot and electronic surveillance, conducting tactical entry and vehicle arrest operations, defensive tactics, firearms, and additional aspects of conducting DEA lead investigations. I have been assigned to the DEA Dayton Resident Office since May of 2017.

3.      Since the time of my assignment with the DEA, I have been involved in narcotics-related arrests, executed search warrants that resulted in the seizure of narcotics, and participated in undercover narcotics purchases.   Through training and experience, I am familiar with the manner in which persons involved in the illicit distribution of controlled substances often operate. These people usually attempt to conceal their identities, as well as the locations at which they reside, and where they store controlled substances and the illegal proceeds derived.

4.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

2

## PROBABLE CAUSE

5.      Your Affiant submits, based on the facts below, there is probable cause to believe the SUBJECT VEHICLES, as described above, are being utilized by Priscila FUENTES-Negrete to commit narcotics trafficking and money laundering.  Specifically, there is probable cause to believe that FUENTES-Negrete is coordinating the purchase of kilogram quantities of cocaine and facilitating the transfer of drug proceeds; furthermore, FUENTES-Negrete is utilizing the SUBJECT VEHICLES in furtherance of her criminal activity.

6.      On April, 18, 2018, a Hancock County, Indiana, Sheriff's Deputy conducted a traffic stop of SUBJECT VEHICLE 1, which was travelling eastbound on I-70 near mile marker 108 in Hancock County, Indiana.  The Deputy reported the operator of SUBJECT VEHICLE 1, Priscila FUENTES-Negrete, was following a vehicle too closely, which is a moving violation in Indiana.  The Deputy reported that upon approaching the vehicle during the traffic stop, the Deputy smelled a strong odor of marijuana with the windows of the vehicle rolled up.  The Deputy encountered three occupants in SUBJECT VEHICLE 1, FUENTES- Negrete (the driver), Cody Boyd, the front seat passenger, and Brandon Boyd, the rear passenger.  A subsequent probable cause search of the vehicle resulted in the seizure of two handguns, two baggies of suspected marijuana, a pill bottle containing marijuana, and drug paraphernalia. FUENTES-Negrete and B. Boyd were arrested and charged with possessing handguns without a license and possession of marijuana, both misdemeanors in the State of Indiana.  C. Boyd was charged with a felony for being a felon in possession of a handgun and with a misdemeanor for marijuana possession.

7.      During mid-April 2018, Homeland Security Investigations (HSI) Tucson, AZ (hereinafter collectively referred to as "Investigators") received information regarding an Ohio-

3

based Drug Trafficking Organization (DTO), which indicated an individual only known as "Diego" was seeking a source of supply of narcotics from the Tucson, AZ area. Through various investigative techniques, investigators contacted the DTO and negotiated the sale of five kilograms of cocaine to Diego for $100,000. Under the terms of the sale negotiated, an initial $20,000 was due up-front from Diego prior to the delivery of the narcotics. The remaining payment amount was to be due upon arrival of the narcotics the following week in Ohio.

8.      On April 30, 2018, at 7:37 A.M., an undercover investigator received a text message from phone number 937-478-6968. In the text message received, a subject self-identified as Diego's wife ("Luciana") explained that she needed the bank account information to make the deposit of the $20,000 up-front payment. Investigators, using a Confidential Informant (hereinafter referred to as "CI") who was introduced to Luciana as the undercover investigator's brother, gave specific bank account information to Luciana. The undercover investigator responded to Luciana to confirm that the CI provided the bank information. Luciana confirmed she received the bank information from CI and that Luciana was working on the deposits.

9.      On April 30, 2018, at 3:21 P.M., investigators received a telephone call from phone number 937-478-6968, during which Luciana inquired if the deposits that she made were received. The investigator confirmed with Luciana that the funds were received.

10.     On April 30, 2018, HSI Tucson investigators informed HSI Cincinnati investigators that HSI Tucson investigators had received three separate deposits, all under $10,000 for a total of $20,000 into an HSI undercover account. The depositor was purported to be Luciana.

4

11.     On May 1, 2018, at 10:09 A.M., investigators received a telephone call from phone number 937-478-6968, during which Luciana inquired about the status of the narcotics delivery. Luciana indicated that she expected the narcotics to depart from Arizona the same week that the deposit was made. Investigators advised delivery would be the week of May 7, leaving Arizona on the weekend. During the conversation, the Spanish words "ropa" (clothes) and "camisetas" (shirts) were used to refer to the narcotics.

12.     On May 1, 2018, at 2:49 P.M, investigators received a telephone call from phone number 937-283-4949, from Diego. Diego told investigators that Diego received a call from his wife (Luciana) regarding a delay with the product. Diego stated that he expected to have the "camisetas" in town for the "players" the week of April 30, 2018. An undercover investigator explained that there was a delay because Luciana never traveled to Tucson to meet as planned. Diego stated that he could purchase product every two weeks and was looking for a consistent source of supply. Diego asked if the investigators' brother (the CI) told investigators how many "camisetas" Diego was looking to purchase. Investigators confirmed the amount as five (five kilograms of cocaine). Diego acknowledged, and then stated that he will take seven instead and guaranteed that he had the money ready for the purchase. Diego explained that the deposit was made because they (Diego) are serious about the work. Diego told investigators to keep his wife posted on the status. Diego also asked investigators if they understood his (Diego's) situation. Investigators confirmed, acknowledging that investigators are aware that Diego is in prison.

13.     On May 3, 2018, at 11:36 A.M, investigators sent a text message to Luciana at 937-478-6968 and advised that everything is on schedule. Luciana acknowledged the text message, asking for updates as they come.

14.     On May 3, 2018, HSI Cincinnati investigators served HTM Area Credit Union, 847 West Main Street, Troy, Ohio 45373, with an Ohio Organized Crime Investigations Commission (OOCIC) Criminal Subpoena requesting information related to the deposit made to HSI Tucson's undercover bank account, as discussed in paragraphs 8, 9, and 10, above.

15.     HTM provided investigators with information regarding an $8,000.00 wire transfer that occurred on April 30, 2018.  HTM identified an HTM Area Credit Union member, Priscilla FUENTES, as the subject who initiated the transfer of $8,000.00 from an HTM account to an account identified as the undercover bank account.  FUENTES-Negrete's account had a listed address of 547 W. Franklin Street, Troy, OH 45373, and a listed phone number as 937-552-6935.  Investigators were also provided video surveillance footage of the transaction.  FUENTES-Negrete was identified on the video surveillance as the person who initiated the transaction.

16.     Investigators conducted a database query for information regarding phone number 937-552-6935, which was listed on the HTM account.  Database results revealed the telephone number subscriber as "P. FUENTES Negre."

17.     Video surveillance shows that, at the time of the wire transfer at HTM, FUENTES utilized a vehicle, bearing Ohio registration GZE 5545 (SUBJECT VEHICLE 2).  A database query revealed Ohio registration GZE 5545 is assigned to a 1997 White Cadillac registered to FUENTES-Negrete at 547 W. Franklin Street, Troy, OH 45373.  Database queries also revealed FUENTES-Negrete's address is listed as 547 W. Franklin Street, Troy, OH 45373 on her Ohio's Driver's License.

6

18.      On May 7, 2018, investigators conducted surveillance of 547 W. Franklin Street, Troy, OH 45373, and observed SUBJECT VEHICLE 1 and SUBJECT VEHICLE 2 parked near the residence.

19.      On May 8, 2018, your Affiant queried public records databases (Thomson Reuters) which revealed that SUBJECT VEHICLE 1 and SUBJECT VEHICLE 2 were registered in the State of Ohio on April 4, 2018, and February 2, 2018, respectively.  The SUBJECT VEHICLES are both registered to FUENTES at 547 W. Franklin Street, Troy, Ohio.

20.      On May 8, 2018, your Affiant appeared before United Stated District Court Judge Walter H Rice with an application for a tracking warrant for SUBJECT VEHICLE 1 and SUBJECT VEHICLE 2.  Judge Rice approved Tracking Warrants for both SUBJECT VEHICLE 1 and SUBJECT VEHICLE 2.

21.      On May 9, 2018, at approximately 11:00 a.m. members of the DEA Dayton RO and HSI Cincinnati Office established surveillance in the area of Troy, Ohio in anticipation of Pricilla FUENTES-Negrete traveling to meet with a DEA Tucson Resident Office Task Force Officer (acting on behalf of the DEA in an undercover capacity) for the purpose of purchasing multiple kilograms of cocaine from the undercover Task Force Officer.

22.      At approximately 10:25 a.m., on May 9, 2018, an investigator monitored the GPS location data for SUBJECT VEHICLE 1, utilized by FUENTES-Negrete.  At approximately 10:28 a.m., the investigator observed that SUBJECT VEHICLE 1 left the area of 1205 Heritage Dr., Troy, Ohio, and began traveling surface streets. At approximately 11:08 a.m., the investigator observed that SUBJECT VEHICLE 1 arrived at the Smartstop Self Storage located at 21 Kings Chapel Dr., Troy, Ohio.

7

23.   At approximately 11:15 a.m., on May 9, 2018, an investigator established visual surveillance of the Smartstop Self Storage located at 21 Kings Chapel Dr., Troy, Ohio. Upon arrival, the investigator observed SUBJECT VEHICLE 1 parked between the buildings of the storage unit, and observed FUENTES-Negrete and Cody Boyd standing near an open storage unit door. At approximately 11:46 a.m., the investigator observed FUENTES-Negrete enter the driver seat of SUBJECT VEHICLE 1, and Cody Boyd enter the passenger seat, then exit the storage unit lot. Members of DEA and HSI then conducted mobile surveillance SUBJECT VEHICLE 1, as it traveled on surface streets until it reached 1205 Heritage Drive, Troy, Ohio, at approximately 12:15 p.m.

24.   Upon arrival at 1205 Heritage Drive, an investigator observed FUENTES-Negrete remove an item from the trunk of SUBJECT VEHICLE 1, then enter the residence with Cody Boyd.  At approximately 1:10 p.m., the investigator, observed the garage door of 1205 Heritage Drive open, and observed FUENTES-Negrete pull a dark colored Infinity SUV, displaying Ohio license plate HDK2933, into the driveway.  The investigator then observed FUENTES-Negrete remove a bag from SUBJECT VEHICLE 1. At approximately 1:13 p.m., the investigator observed FUENTES-Negrete place the bag into the rear seat of the Infinity SUV. At approximately 1:14 p.m., the investigator observed FUENTES-Negrete exit the residence and enter the Infinity SUV.  Simultaneously, the investigator observed Cody Boyd enter SUBJECT VEHICLE 1. The investigator then observed both vehicles leave the residence traveling in tandem.

25.   DEA and HSI investigators then conducted mobile surveillance of FUENTES-Negrete and Cody Boyd as they traveled in tandem along surface streets from 1205 Heritage Drive to arrive at Troy Memorial Stadium located at 151 W Staunton Rd, Troy, Ohio, at

approximately 1:24 p.m. Upon arrival, an investigator observed an unknown person walk up to the Infinity SUV and remove the bag from the back seat. DEA SA Vill then entered the parking lot and observed an unknown teenage black female walking away from the Infinity SUV carrying a red duffle bag. SA Vill observed that the field appeared to be hosting a high school track meet.

26. At approximately 1:25 p.m., FUENTES-Negrete and Cody Boyd exited the parking lot. DEA and HSI investigators then continued to conduct mobile surveillance of FUENTES-Negrete and Cody Boyd as they traveled in tandem from Troy Memorial Stadium to Interstate 75 south. At approximately 1:58 p.m., HSI SA Brian Turk received a phone call from an HSI Tucson Special Agent, stating that FUENTES-Negrete had contacted the undercover Task Force Officer, and apologized for running late, explaining that she had to drop something off at the school, but was now on her way.

27. At approximately 2:05 p.m. Ohio State Highway Patrol (OSP) conducted a traffic stop on FUENTES-Negrete, while driving the Infinity SUV, on Interstate 75 south, at mile marker 38.4. During the traffic stop, a trooper located bulk U.S. Currency secreted in a cereal box located in the rear passenger floorboard of the vehicle. FUENTES-Negrete told the trooper that she had no knowledge that U.S. Currency was in the vehicle, and had no knowledge of to whom the U.S. Currency belonged. The currency was later officially counted and determined to be $122,450.00.

28. SA Vill observed that, at the time FUENTES-Negrete was stopped by the trooper, Cody Boyd continued to travel south on Interstate 75, then exited onto U.S. Route 123. Members of DEA then continued to monitor the GPS location of Cody Boyd as he drove

9

SUBJECT VEHICLE 1 around the area of the traffic stop until he parked at the Arby's located at 895 W Central Avenue, Springboro, Ohio.

29.     At approximately 2:45 p.m. FUENTES-Negrete was released from the traffic stop by OSP.  DEA conducted mobile surveillance of FUENTES-Negrete as she traveled surface streets from the traffic stop and ultimately arrived at the Cincinnati Premium Outlets located at 400 Premium Outlets Drive, Monroe, Ohio 45050.

30.     At approximately 3:15 p.m., DEA SA Steven Lucas re-established visual surveillance of Cody Boyd in SUBJECT VEHICLE 1.  At approximately 3:21 p.m., SA Lucas observed a white female exit the passenger seat of SUBJECT VEHICLE 1, and enter the driver seat of a red Suburban displaying Ohio license plate HJY7352. A law enforcement check of the Suburban's license plate showed it was registered to Kimberly Boyd. Upon viewing the driver's license photograph of Kimberly Boyd, SA Lucas immediately recognized her as the female he observed exiting SUBJECT VEHICLE 1 and entering the Suburban.

31.     At approximately 3:45 p.m., SA Lucas observed Kimberly Boyd exit the parking lot of Arby's driving the Suburban, and Cody Boyd exit the parking lot driving SUBJECT VEHICLE 1.  SA Lucas and members of DEA conducted mobile surveillance of Kimberly Boyd and Cody Boyd as they traveled in tandem from the Arby's until they met with FUENTES-Negrete at the Outlet Mall at approximately 3:58 p.m.  DEA SA Dratt then observed FUENTES-Negrete, Cody Boyd, and Kimberly Boyd exit their vehicles, and meet in the parking lot near the Infinity SUV.

32.     On May 21, 2018, investigators from the DEA Dayton Resident Office served the SmartStop storage facility with an administrative subpoena for a list of tenants at the storage

10

facility.  Members of the SmartStop storage facility supplied members of DEA Dayton with the requested tenant list.  Your affiant noted the tenant list revealed Priscila FUENTES Negrete was the listed tenant for unit number 5102.  The tenant list produced the following information for FUENTES: Address:  547 W. Franklin Street, Troy, Ohio 45373; Email: priscy124@icloud.com; Telephone: 937-552-6935; Unit Number: 5102.

33.     Based on my training and experience, I know that drug traffickers often generate and maintain large amounts of United Sates currency, which are typically proceeds of narcotics trafficking.  I also know that vehicles are often times used to conceal, transport, and distribute illegal narcotics and the proceeds of illegal narcotics.  Your Affiant knows that drug traffickers use vehicles as a means of transportation to narcotics stash locations and distribution points. Many times, these same drug dealers actively utilize techniques designed to foil conventional surveillance and elude law enforcement.

34.     Based on my training and experience, I also know that drug traffickers and those involved in money laundering use multiple vehicles to evade detection, and will often switch vehicles after being stopped by law enforcement while in the possession of drug proceeds and/or narcotics.  As discussed above, SUBJECT VEHICLE 1 and SUBJECT VEHICLE 2 are both registered to FUENTES-Negrete at the same address and have been observed near the same residence in Troy, Ohio.  FUENTES-Negrete was pulled over while operating SUBJECT VEHICLE 1 in Hancock County, Indiana with marijuana, drug paraphernalia and firearms in the vehicle.  Video surveillance shows that FUENTES-Negrete operated SUBJECT VEHICLE 2 when arriving at the credit union to conduct a wire transfer to the undercover account.  More recently, SUBJECT VEHICLE 1 was utilized by FUENTES-Negrete and Cody Boyd to travel to a storage facility.  Shortly thereafter, Cody Boyd traveled in SUBJECT VEHICLE 1 in tandem

11

with FUENTES-Negrete, who was found to be in possession of large amounts of bulk U.S. currency during a traffic stop while operating another vehicle.

35.     Based upon the information above, I submit that there is probable cause to believe that FUENTES-Negrete is continuing to use the SUBJECT VEHICLES, that she is involved in drug trafficking and money laundering, in violation of federal law, and that the movement of the SUBJECT VEHICLES may provide evidence of her travel, places where she meets with drug trafficking associates (and assist in identifying those associates), and locations where controlled substances may presently be stored and/or sold. Based upon the fact that the SUBJECT VEHICLES are registered to the address 547 W. Franklin Street, Troy, Ohio, which is located in the Southern District of Ohio, and the fact that GPS location data for the SUBJECT VEHICLES, obtained pursuant to the previous federal search warrants discussed in paragraph 20 above, shows that the SUBJECT VEHICLES are located in the Southern District of Ohio as recently as June 20, 2018, I believe that the SUBJECT VEHICLES are presently within the Southern District of Ohio.

36.     I submit that the requested authorization for continued installation/monitoring of tracking devices will greatly enhance law enforcement's ability to locate FUENTES-Negrete as she travels to and from various locations in the SUBJECT VEHICLES to further facilitate the drug and money laundering activities, without jeopardizing the ongoing investigation. This information will also continue to assist investigators in locating FUENTES-Negrete for the purpose of furthering the investigation, to include the identification of conspirators, as well as the identification of locations utilized to purchase, store, and distribute the illegal drugs and/or illicit drug proceeds. Accordingly, I believe GPS trackers will continue to help investigators track the

SUBJECT VEHICLES to drug transaction and/or money drop-off/pick-up locations. This will

help investigators determine others yet unknown involved with the drug trafficking organization.

37.    In order to track the movement of the SUBJECT VEHICLES effectively and to

decrease the chance of detection, your Affiant seeks the authorization of the U.S. District Court,

Southern District of Ohio, to authorize the continued monitoring/installation of the tracking

devices in or on the SUBJECT VEHICLES as they travel both within and outside of the

Southern District of Ohio.  Because the SUBJECT VEHICLES may sometimes be parked on

private property, it may be necessary to enter onto private property and/or move the SUBJECT

VEHICLES in order to effect the installation, maintenance, repair, replacement, and removal of

the tracking devices.  Accordingly, your affiant seeks authorization to enter onto private

properties to effect the installation, maintenance, repair, replacement, and removal of the

tracking devices, including: 547 W. Franklin Street, Troy, Ohio.  To ensure the safety of the

executing officer(s) and to avoid premature disclosure of the investigation, it is requested that the

court authorize installation, maintenance, and removal of the tracking devices during both

daytime and nighttime hours.  The executing agent will note the exact time and date of

installation, as well as the time it was used, on the warrant, prior to return.

38.    In the event the court grants these applications, there will be continued periodic

monitoring of the tracking devices during both daytime and nighttime hours for a period of 45

days following the issuance of the warrant.  The tracking devices may produce signals from

inside private garages or other such locations not open to the public or visual surveillance.

**AUTHORIZATION REQUEST**

39.    Based on the foregoing, I request that the Court issue the proposed search

warrants, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 3117, that

13

authorize members of DEA or their authorized representatives, including but not limited to other law enforcement agents and technicians assisting in the above-described investigation, to continue to install/maintain a tracking device in/on the SUBJECT VEHICLES within Southern District of Ohio within 10 days of the issuance of the proposed warrants, to continue to maintain, repair, and/or replace the tracking devices as necessary, and to remove the tracking devices from the SUBJECT VEHICLES after the use of the tracking devices has ended; to continue to install, maintain, and remove the tracking devices during both daytime and nighttime hours; to surreptitiously enter private property and/or move the SUBJECT VEHICLES to effect the installation, repair, replacement, and removal of the tracking devices; and to continue monitor the tracking devices for a period of 45 days following the issuance of the warrants, including when the tracking devices are inside private garages and other locations not open to the public or visual surveillance, both within and outside the jurisdiction of the United States District Court for the Southern District of Ohio.

40.     In accordance with 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), I further request that the warrants delay notification of the execution of the warrants for 30 days after the end of the authorized period of tracking (including any extensions thereof) because there is reasonable cause to believe that providing immediate notification may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice would seriously jeopardize the ongoing investigation by prematurely revealing its existence and giving suspects an opportunity to flee from prosecution, destroy or tamper with evidence, intimidate potential witnesses, notify confederates, and change patterns of behavior.

41.     I further request that the Court seal the warrants and the affidavit and applications in support thereof, except that copies of the warrants in full or redacted form may be maintained

14

by the United States Attorney's Office and may be served on Special Agents and other

investigative and law enforcement officers of the DEA, federally deputized state and local law

enforcement officers, and other government and contract personnel acting under the supervision

of such investigative or law enforcement officers, as necessary to effectuate the warrants.  These

documents pertain to and discuss an ongoing criminal investigation that is neither public nor

known to all the targets of the investigation.  Accordingly, there is good cause to seal these

documents because their premature disclosure may seriously jeopardize the investigation.

Sealing these documents will also better ensure the safety of agents and others.


Respectfully submitted,

Austin M. Roseberry
Special Agent
Drug Enforcement Administration


Subscribed and sworn to before me on this 21st day of June, 2018.

MICHAEL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

15